UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LAMAR BURTON,

                    Plaintiff,                 Case No. 1:20-cv-858

v.                                        Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Skipper, Wellman, Duma, Randall, and Unknown Part(y)(ies).

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan.  Plaintiff sues the MDOC and the following RMI officials:  Nurse Practitioner (NP) Corey Grahn; Nurses (RNs) Unknown Leland, Unknown Duma, and Unknown Randall; HUM[1] (Health Unit Manager) Unknown Deeren; Grievance Coordinator Unknown Wellman; Warden Unknown Skipper; and an unknown correctional officer (Unknown Part(y)(ies)).

According to the complaint, at some time prior to Plaintiff' arrival at RMI on or around September 10, 2019, he underwent neurosurgery on his arm.  During his intake at RMI, he was seen in health care by Defendant RN Duma.  Plaintiff was wearing an arm brace.  He explained to Defendant Duma that, following his recent arm surgery, he had chronic carpal tunnel problems and neuropathy that caused his arm and chest to periodically seize up.  During such episodes, he experienced severe pain that would shoot up his arm and into his chest.  Plaintiff explained to Defendant Duma that, when this happened, he needed to immediately soak his arm in hot water containing Epsom salts, in order to release the nerves.  At the time of his arrival, Plaintiff had a medical detail order for the arm brace and for a soaking basin and Epsom salts.  Despite Plaintiff's explanation and his obvious medical needs, Defendant Duma unilaterally and without authority discontinued his medical detail for the basin and Epsom salts.

---

[1] Plaintiff indicates that Defendant Deeren is an RUM (Resident Unit Manager).  However, he also identifies Defendant Deeren as an employee of Corizon, Inc., the medical services provider for the MDOC.  RUMs are custody employees of the MDOC, not health care employees.  In addition, Plaintiff's attachments include Step-I grievance responses signed by Defendant Deeren as HUM.  (*See, e.g.,* ECF No. 1-1, PageID.30-31.)  The Court will use the correct abbreviation of "HUM" throughout this opinion.

Plaintiff filed a grievance against Defendant Duma.  The grievance responders at Steps I and II found that Defendant Duma had acted beyond her authority in lifting the medical detail.  (*See* Grievance No. RMI 2019 09 1567 12E3, ECF No. 1-1, PageID.15, 18.)  Plaintiff subsequently was seen by an authorized medical provider on September 26, 2019, and the provider confirmed the discontinuation of the medical detail, the remedy provided was counseling to Defendant Duma to not take such actions without authority.  (*Id.*)

On September 13, 2019, Plaintiff sent a kite to health care, when his hand and arm seized up, causing extreme pain in his arm and chest.  On September 15, 2019, Plaintiff was seen by Defendant Randall, who informed Plaintiff that there was nothing she could do for him and that RMI was the worst place to be confined, if one had a serious medical problem.  Defendant Randall informed Plaintiff that an appointment with the medical provider had been scheduled for him.

On September 18, Plaintiff went to health care about his hand and arm pain and seizing.  While he was there, Plaintiff also complained that he needed the wooden tongue blades for his arm brace, which had been taken from him.  He was told that he could not have them, despite having an accommodation for keeping them.  Plaintiff's health care callout for September 19, 2019, was cancelled.

On September 20, 2019, Plaintiff was moved to another cell because of his seizure disorder.  Plaintiff sent another kite to health care on September 21, and he went to health care on September 23.  At that time, he was told that he would see the doctor on September 24.  The appointment did not happen, and another health care visit scheduled for September 25 was cancelled.  On September 26, Plaintiff was seen in health care by Defendants RN Deeren and PA Grahn.  Grahn told Plaintiff that, under RMI custody policy, Plaintiff could not have a basin tub, Epsom salts, or the wooden tongues for his arm brace.  When Plaintiff described his ongoing pain,

3

Defendant Grahn advised him that he would be seeing the neurosurgeon in October.  Plaintiff sent additional kites to health care on September 26 and 28 and October 3, 2019.

Plaintiff complains that, on October 3, 2019, Defendant Wellman advised him that he needed to request a grievance form from her, because he was on modified grievance access (grievance restriction).  Plaintiff asserts that he was never placed on grievance restriction when he filed grievances about health care.  However, when he complained about water issues (unrelated to his health grievances) on September 25, he was placed on grievance restriction.

On October 9, 2019, Plaintiff went to health care, asking a nurse if he could soak his hand and arm in hot water for a few minutes to ease his pain.  Defendant Leland refused to allow it.  About 45 minutes later, Plaintiff suffered a seizure, allegedly triggered by the extreme pain he was suffering.  When Plaintiff awoke from his seizure, his head hurt and he had dried blood on his pillow.  When he looked in the mirror, he saw that he had a cut on the side of his head.  Other inmates informed Plaintiff that Defendant Leland had come to his cell when he was having the seizure.  Leland planned to leave Plaintiff on the floor, but custody officers told Leland that Plaintiff needed to be placed on his back.  Leland recorded Plaintiff's vital signs but delivered no medical treatment.  Plaintiff filed a grievance against Defendant Leland.

Plaintiff sent additional kites to health care on October 13 and 20, 2019.  On November 4, Plaintiff was seen by Defendant Deeren and Grahn.  Defendant Grahn asked Plaintiff if he would like to go to the neurosurgeon.  Plaintiff responded that he should have been sent back to the neurosurgeon the prior month.  Defendant Grahn indicated that he would try to arrange the visit.  Grahn again advised Plaintiff that custody restrictions prevented Plaintiff from having a basin and Epsom salts.  Plaintiff informed Defendants Deeren and Grahn that he had been using his trashcan as a basin in which to soak his arm.  Plaintiff complains, however, that since he began

4

using his trashcan as a basin, he has been subjected to ridicule by other prisoners and staff.  Plaintiff

suggested to Defendant Grahn that he be transferred if transfer was necessary for him to receive

proper care.  When Defendants took no action, Plaintiff filed a grievance.

Plaintiff sent additional kites to health care on November 18 and 19.  On November

19, 2019, Plaintiff's arm seized up on him while he was exercising.  He went to health care, where

he met with Nurse Miller (not a Defendant).  Miller allowed Plaintiff to soak his arm for 15

minutes.  Miller told Plaintiff that Defendant Grahn enjoyed giving prisoners a hard time.  Plaintiff

then spoke with Defendant Deeren, who categorically refused to allow Plaintiff to go to health care

whenever he wanted to soak his arm.  Plaintiff submitted a grievance against Defendant Deeren.

Plaintiff saw Defendant Grahn on November 21, 2019.  Grahn advised Plaintiff that

he had been approved to see the neurosurgeon.  Plaintiff again asked for a medical detail to go to

health care whenever his arm seized, but Grahn refused.  Grahn also told Plaintiff that he could

not have a basin and had to continue to use his trashcan.  Plaintiff continued to submit kites and

grievances.

On December 16, 2019, Plaintiff saw the neurosurgeon, who told him that he would

make some recommendations.  When Plaintiff returned to the prison after his neurosurgeon visit,

he was seen by Nurse Bowker (not a Defendant), rather than the nurse practitioner, which Plaintiff

alleges was required by policy because of a new treatment plan.  Plaintiff filed a grievance and a

kite.  On January 2, 2020, Plaintiff was seen in health care by Defendant Grahn.  Gran advised

Plaintiff that the prescriptions recommended by the neurosurgeon were not permitted, but that a

different medication would be prescribed.  Defendant Grahn again refused the recommended basin

and Epsom salts.  Thirty minutes after Plaintiff returned to his cell, Plaintiff was called back to

health care to be given a basin and Epsom salts, as well as a detail to have the items.  Plaintiff

submitted a series of grievances, contending that the fact that he was finally given the basin and Epsom salts demonstrates that Defendants' reasons for refusing to provide those items over the prior 115 days were false.

On January 9, 2020, Plaintiff was called out by Defendant Grievance Coordinator Wellman. Wellman told Plaintiff that they were tired of his "bulls*t" and that they were placing Plaintiff back on modified grievance access for 90 days.

Plaintiff alleges that his placement on modified grievance access was taken in retaliation for exercising his protected First Amendment right to petition government. He also alleges that Defendants violated prison policy and acted with deliberate indifference to his pain and serious medical needs by depriving him of medications, denying a medical detail for a basin and Epsom salts, denying his requests to go to health care to soak his arm whenever it seized, and denying other medical assistance and physical therapy for four months.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Defendant MDOC

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.  Therefore, the Court dismisses the MDOC.

## IV.    Defendants Skipper & Unknown Part(y)(ies)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010,

8

1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Plaintiff fails even to mention Defendants Skipper and the unknown RMI officer (Unknown Part(y)(ies)) in the body of his complaint.  His allegations therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff intends to allege that Defendant Skipper failed to properly supervise his subordinates and failed to take action on Plaintiff's grievances, he fails to state a § 1983 claim.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300

9

(6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendant Skipper engaged in any active unconstitutional behavior.

Plaintiff therefore fails to state a claim against Defendants Skipper and Unknown Part(y)(ies).

## V.      Defendant Wellman

Plaintiff claims that Defendant Wellman placed Plaintiff on modified grievance access in retaliation for Plaintiff having filed numerous grievances about his lack of medical care and other prison conditions.  Plaintiff also arguably suggests that Defendant Wellman deprived him of his due process right to file prison grievances.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  The Court will assume for purposes of this opinion that Plaintiff's grievances were nonfrivolous.

10

Plaintiff's retaliation claim, however, fails at the second step.  The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim.  *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at \*5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001).  Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court.  A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen Plaintiff's grievances prior to filing to determine whether they were grievable, non-frivolous, and non-duplicative.  *See Kennedy*, 20 F. App'x at 471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)).  Because placement on modified grievance access is not adverse action, Plaintiff fails to state a retaliation claim against Defendant Wellman.

Further, Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at \*2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at \*1 (6th Cir. Mar. 28, 1994).  Because Plaintiff

11

has no liberty interest in the grievance process, Defendant Wellman's denial of grievance forms or implementation of modified grievance access did not deprive Plaintiff of due process.

## VI.   Defendants Grahn, Deeren, Leland, Duma, & Randall

Plaintiff alleges that Defendant health care providers Grahn, Deeren, Leland, Duma, and Randall were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 540 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 466, 451

12

(6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . :  A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105.  As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received

14

was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### A.     Defendant Duma

Plaintiff alleges that, upon his arrival at RMI, Defendant Duma terminated his medical detail to have a basin and Epsom salts for soaking his arm whenever it seized up.  Plaintiff contends that under prison policy Defendant Duma, as a registered nurse, was not authorized to terminate a medical detail established by a physician or physicians assistant.  He also contends that, in terminating his medical detail, Defendant Duma was deliberately indifferent to Plaintiff's reports of extreme pain when his arm seized up.

To the extent that Plaintiff complains that Defendant Duma violated prison policy, he fails to establish an Eighth Amendment claim.  Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff's allegations fall short of meeting the deliberate-indifference standard.  Plaintiff alleges no more than that Defendant Duma met with him at the time of his arrival and denied him a basin and Epsom salts because of custody rules.  The fact that Defendant Duma discontinued the medical detail for those items does not increase the seriousness of her

15

conduct, given that her decision was based on a single interaction with Plaintiff and was upheld by Defendant Grahn shortly thereafter.

Accepting that Plaintiff's frequent experience of his arm freezing up constituted an objectively serious medical need, Defendant Duma, at the time of her actions, had nothing more than Plaintiff's report that Plaintiff experienced severe pain whenever his arm seized up.  She had never witnessed such an incident, and she as yet had no direct information about the frequency of the problem.  Under these circumstances, Plaintiff fails to demonstrate that Defendant Duma had subjective awareness that denying Plaintiff a basin and Epsom salts would cause him to endure the objectively serious medical condition of frequent extreme pain.

As a consequence, Plaintiff's Eighth Amendment claim against Defendant Duma will be dismissed.

### B.    Defendant Randall

Plaintiff alleges that, on September 15, 2019, three days after his arrival at RMI, he went to health care with a claim of arm and chest pain caused by his arm seizing up.  He met with Defendant Randall, who advised him that she was unable to do anything for him, but that she had scheduled an appointment with the medical provider.  Defendant Randall also told Plaintiff that "RMI is the worst place . . . to be at due to serious medical needs." (Compl., ECF No. 1, PageID.4)

Nothing about Plaintiff's allegations suggests that Defendant Randall was deliberately indifferent to his serious medical need.  Indeed, Plaintiff's argument that Defendant Duma lacked authority to change his medical detail demonstrates that Defendant Randall also lacked that authority.   Randall expressed concern about Plaintiff's pain and scheduled an appointment with the medical provider.  Plaintiff's limited allegations against Defendant Randall fall short of demonstrating that Randall had a sufficiently culpable state of mind to support and Eighth Amendment claim.

**C.    Defendants Grahn, Deeren, and Leland**

Upon initial review, the Court concludes that Plaintiff's allegations against Defendants Grahn, Deeren, and Leland are sufficient to state an Eighth Amendment claim.

**VII.    Pending Motion**

Plaintiff has filed a motion (ECF No. 6) seeking a court-appointed attorney. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel therefore will be denied.

<u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Skipper, Duma, Randall, Wellman, and Unknown Part(y)(ies) will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will deny Plaintiff's motion to appoint counsel (ECF No. 6). Plaintiff's Eighth Amendment claims against Defendants Grahn, Deeren, and Leland remain in the case.

17

An order consistent with this opinion will be entered.


Dated:    December 1, 2020              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        CHIEF UNITED STATES DISTRICT JUDGE