UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR BURTON, #495156,

    Plaintiff,                                 Hon. Robert J. Jonker

v.                                            Case No. 1:20-cv-858

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 45). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted and this matter terminated.

## BACKGROUND

Plaintiff initiated this action against the Michigan Department of Corrections, seven named individuals, and an unknown number of "unknown parties." (ECF No. 1). The Court subsequently dismissed most of Plaintiff's claims. (ECF No. 8-9). At this juncture, only one defendant remains: Nurse Practitioner Corey Grahn, who now moves for summary judgment. In his complaint, Plaintiff alleges the following.

On or about September 10, 2019, Plaintiff arrived at the Michigan Reformatory (RMI). Prior thereto, on an unspecified date, Plaintiff underwent surgery on his right upper extremity. When Plaintiff arrived at RMI, he informed a nurse that, due to his

-1-

surgery, he occasionally experienced severe pain that caused his arm and chest to seize. Plaintiff explained that when this occurred he needed to immediately soak his arm in hot water containing Epsom salts. Plaintiff had previously been issued an accommodation permitting him to possess a basin and Epsom salts. This accommodation was cancelled, however, after Plaintiff's arrival at RMI.

On September 26, 2019, Plaintiff met with Defendant Grahn who informed Plaintiff that he was not permitted to possess a basin or Epsom salt. Grahn also denied Plaintiff's request to possess "wooden blades," which Plaintiff asserted he needed for his arm brace. Defendant Grahn met with Plaintiff on November 4, 2019, and again denied Plaintiff's request for these items.

Plaintiff next met with Defendant Grahn on November 21, 2019. Plaintiff requested that he be given a medical detail permitting him to come to Health Care whenever his hand/arm seizes up. Defendant denied Plaintiff's request. On January 3, 2020, Defendant Grahn informed Plaintiff that certain medications provided to him by an off-site medical provider were not allowed within the prison. Defendant took the medications in question and provided Plaintiff with substitute medications. Defendant also again denied Plaintiff's request to possess a basin and Epsom salt.

Plaintiff alleges that Defendant Grahn violated his Eighth Amendment right to be free from cruel and unusual punishment. Defendant Grahn now moves for summary judgment. Plaintiff has responded to the motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, - - - F.3d - - -, 2021 WL 1257802 at *4 (6th Cir., Apr. 6, 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot

merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

## ANALYSIS

The Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06. The analysis by which a defendant's conduct is evaluated consists of two-steps.

First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious

medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). But, if the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid*.

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294. To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, summary judgment is appropriate. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because

the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

Plaintiff alleges that Defendant Grahn: (1) denied his requests for a basin and Epsom salts so that he could soak his arm; (2) denied his requests for wooden blades to place in his arm brace; (3) denied his request for a detail permitting him to go to Health Care whenever he was experiencing difficulties with his arm; and (4) discontinued the medications prescribed to him by an off-site medical provider.

A.     Basin and Epsom Salts

On July 2, 2019, Plaintiff underwent carpal tunnel/nerve decompression surgery on his right hand/wrist. (ECF No. 45-2, PageID.549). On September 9, 2019, Plaintiff was approved to have a basin and Epsom salts. (ECF No. 48-1, PageID.707). But, the following day, Plaintiff was transferred from the Macomb Correctional Facility (MRF) to the Michigan Reformatory (RMI). (ECF No. 45-2, PageID.524). As of this date, RMI does not permit prisoners to possess basins in their cells. (ECF No. 45-2, PageID.531, 537).

On November 4, 2019, Plaintiff was approved for a follow-up examination with an off-site neurosurgeon. (ECF No. 45-2, PageID.549-50). On November 19, 2019, Plaintiff reported that "the only thing" that helps alleviate the pain in his right arm is to soak it in "warm water." (*Id.*, PageID.555). Plaintiff further indicated that, despite not being provided a basin, he was able to soak his arm using his trash can. (*Id.*). On November 21, 2019, Plaintiff was examined by Defendant Grahn. (*Id.*, PageID.557-60). Defendant modified Plaintiff's medication regimen and reminded him that he was approved to meet with a neurosurgeon. (*Id.*).

Plaintiff met with a neurosurgeon on December 16, 2019. (ECF No. 45-2, PageID.565-67). The doctor prescribed medication and indicated that Plaintiff "would benefit from ability to soak hand and arm in Epsom salt with use of a plastic basin." (*Id.*, PageID.567). The doctor also recommended that Plaintiff be provided a neoprene compression brace for his right wrist because this "will provide pain relief and support without rigid pieces." (*Id.*). Plaintiff met with Defendant two days later. (*Id.*, PageID.568). With respect to the neurosurgeon's recommendations, Defendant scheduled Plaintiff to meet with a medical provider so that such could be reviewed. (ECF No. 45-2, 45-3, PageID.568, 572). On January 3, 2020, Defendant Grahn issued a Special Accommodation authorizing Plaintiff to possess a "plastic basin with Epsom salt." (ECF No. 48-1, PageID.706).

The evidence submitted by Defendant shows that upon his arrival at RMI, the facility had a policy that prisoners were not permitted to possess basins in their cells. Plaintiff has presented no evidence to the contrary. In his affidavit, Defendant asserts that "as a medical provider, I have no authority to issue a medical detail if it does not comply with custody rules." (ECF No. 45-3, PageID.572). Plaintiff has presented no evidence suggesting otherwise.

Thus, while Plaintiff may have preferred to be provided a basin to use within his cell, the undisputed evidence shows that Defendant simply could not accede to Plaintiff's request. Moreover, Plaintiff concedes that he was nevertheless able to soak his arm using his trash can. Thus, Plaintiff cannot establish that the refusal to provide him a basin deprived him of medical care. Plaintiff argues that since he was allowed to have a trash can in his cell he should have been permitted to have a basin. But Plaintiff concedes in his complaint that the distinction prison officials made between these two items was that a basin, unlike a trash can, was small enough to pass through the cell bars. (ECF No. 1, PageID.6). Thus, prison officials reasonably determined that a basin presented a greater safety and security risk than a trashcan.

As previously noted, Defendant Grahn issued Plaintiff an accommodation on January 3, 2020, to have a plastic basin and Epsom salt. Plaintiff argues that the fact Defendant issued this accommodation indicates that Defendant had the authority from the outset to approve his requests for a basin. Plaintiff has presented no evidence to support this assertion. Moreover, even if Plaintiff's assertion is correct, it establishes

merely that Defendant *delayed* medical treatment for Plaintiff. To prevail on a claim that Defendant delayed his requests for medical treatment, Plaintiff is required to present medical evidence establishing that the delay in treatment he experienced caused him to suffer adverse medical consequences. *See Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001) ("an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed"). Plaintiff has presented no such evidence. Accordingly, the undersigned recommends that Defendant is entitled to summary judgment as to this claim.

    B.    Wooden Blades

Plaintiff alleges that Defendant denied his request for wooden "tongue blades" to place inside his wrist brace. On May 20, 2019, Plaintiff was authorized to have tongue blades to place inside his wrist brace. (ECF No. 45-2, PageID.534). On September 10, 2019, during transport from MRF to RMI, Plaintiff's tongue blades were confiscated by MDOC personnel because they presented a "safety issue." (*Id.*, PageID.529). On September 21, 2019, Plaintiff was informed that his tongue blades would be returned. (*Id.*, PageID.529, 534). Plaintiff has presented no evidence that Defendant was involved in the decision to confiscate his tongue blades during transport. Plaintiff has likewise presented no evidence that Defendant refused to return such to Plaintiff following his arrival at RMI. Accordingly, the undersigned recommends that Defendant is entitled to summary judgment as to this claim.

  C. Health Care Detail

  Plaintiff alleges that, on November 21, 2019, he asked Defendant Grahn for a medical detail permitting him to come to Health Care whenever his hand/arm seizes up. Defendant Grahn asserts that he never received any such request, but that if he had it would have been denied because Plaintiff "has around the clock access to healthcare by either sending a written request (kite) detailing concerns, or if emergent, notifying custody of the need for immediate medical attention."   (ECF No. 45-3, PageID.572).

  The evidence reveals that Plaintiff was able to submit medical kites and received regular medical care.   Plaintiff has presented no evidence that he was prevented from using the kite system or unable to communicate with prison staff if he was experiencing an emergent medical situation.   Furthermore, even if Plaintiff did experience difficulties requesting medical care through normal methods, he has presented no evidence that Defendant Grahn was aware of such.   Defendant's alleged refusal to afford Plaintiff special treatment or access to the prison healthcare system does not violate the Eighth Amendment as Plaintiff cannot show that such resulted in any denial or delay in medical treatment.   Accordingly, the undersigned recommends that Defendant is entitled to summary judgment as to this claim.

D.   Medications Prescribed by Off-Site Provider

Plaintiff alleges that, on January 3, 2020, Defendant Grahn informed him that certain medications subscribed by his neurosurgeon were not allowed within the prison. According to Plaintiff, Defendant took the medications in question and provided him with substitute medications.

Plaintiff has identified no evidence supporting these allegations. As already noted, following a December 16, 2019, examination, a neurosurgeon prescribed certain medications for Plaintiff. (ECF No. 45-2, PageID.565-67). Plaintiff met with Defendant two days later. (*Id.*, PageID.568). With respect to the neurosurgeon's recommendations, Defendant scheduled Plaintiff to meet with a medical provider so these recommendations could be reviewed. (ECF No. 45-2, 45-3, PageID.568, 572). Plaintiff has presented no evidence that Defendant Grahn took any action regarding the medications prescribed by his neurosurgeon. Moreover, even if Defendant had modified Plaintiff's medication regimen as alleged, Plaintiff has presented no evidence that the alleged "substitute" medications were insufficient or inadequate. Thus, at most, such action would have represented a mere difference of opinion regarding Plaintiff's medical care which, as noted above, does not implicate the Eighth Amendment. The undersigned, therefore, recommends that Defendant is entitled to summary judgment as to this claim.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 45) be granted and this matter terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: October 4, 2021        /s/ Phillip J. Green
                             PHILLIP J. GREEN
                             United States Magistrate Judge